## LYDIA M. BRADLEY, APPELLANT. v. ERIE RAILROAD COMPANY, RESPONDENT.

Argued May 27, 1929—Decided October 24, 1929.

For the appellant, *Alexander Simpson*.

For the respondent, *Edward A. Markley* and *Charles H. Broadhurst*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff brought suit in Hudson Common Pleas in an action at law wherein she sought to

recover damages from the defendant for personal injuries sustained August 20th, 1924, at the latter's railroad station, Lackawaxen, Pennsylvania. The plaintiff intending to board a train of the defendant destined for New York, while crossing from the platform adjacent to the station building to the platform where the New York train could be boarded, fell and received injuries for which she had a verdict for damages, and judgment was entered thereon. At the close of the plaintiff's case defendant moved for a nonsuit, and at the conclusion of the entire case, for the direction of a verdict in its favor, both of which motions were denied by the trial judge, who submitted the case to the jury with the result above stated. The defendant appealed from this judgment to the Supreme Court, which reversed it on the ground (stated by the defendant-respondent in the brief here), as indicated in the opinion, that the court should have granted the defendant's motion for a direction of a verdict in its favor because there was no evidence of any negligence on the part of the defendant. From the judgment of reversal entered in the Supreme Court the plaintiff appeals to this court.

The defendant in its brief here says that the only ground of appeal urged by the plaintiff is that the Supreme Court reversed the judgment of the Hudson Common Pleas, whereas the Supreme Court should have affirmed that judgment. It then asserts that the ground taken by the Supreme Court for reversal is unassailable, but that out of an abundance of caution it argues in its brief all of the grounds of appeal urged in the Supreme Court, conceding that if the judgment of the Supreme Court is sustainable on any ground it should be affirmed. The plaintiff has assigned the only proper error to the Supreme Court, where that tribunal sat as a reviewing court, and that appeal brought before this court all of the errors assigned in the Supreme Court. *Burhans* v. *Paterson,* 99 *N. J. L.* 490; *State* v. *Guarino,* 105 *Id.* 549.

The plaintiff argues but one point on this appeal, namely, that the Supreme Court decided as matter of law what was a matter of fact for the jury, that is, whether the station and

its adjuncts, the way, platforms, &c., were safe, and if not, whether the defendant had used reasonable care to make them safe; and she says that the question whether the station and its adjuncts were of standard pattern, had nothing to do with the matter. The defendant, therefore, was not required to reply to anything but what the plaintiff had argued. The defendant, however, argued two propositions, namely, (1) that there was no evidence of any negligence on the part of the defendant which was the proximate cause of the accident, and (2) that plaintiff, as matter of law, was guilty of contributory negligence. If the plaintiff were guilty of contributory negligence the judgment of the Supreme Court which reversed the Common Pleas would have to be affirmed, as that issue was involved in the trial court, and in the Supreme Court. Notwithstanding such argument defendant had stated previously in its brief that if for any reason the Supreme Court's decision was right it would have to be affirmed. We find it to be correct; and that would seem to preclude the defendant from making the point that the plaintiff was guilty of contributory negligence. But whether so or not, we have examined the contention and find it without merit.

The facts of the case are succinctly as follows: The plaintiff, an unmarried woman twenty-eight years old, had a ticket of the defendant company, and on the 20th day of August, 1924, was at the Lackawaxen station of the defendant, at Lackawaxen, Pennsylvania, where she had never been before and was unacquainted, intending to take a train to Jersey City to return to her home in New York City. She was to take the four-seventeen train, and she arrived at the station, in a hired car, about four-ten. She went through the station onto the platform. This station platform is about two hundred and forty feet long. As she got on the platform, it was necessary for her to pass over to the east-bound tracks which were the tracks running towards New York, they being on the other side of the station away from the platform next to the station upon which she came on going out of that building. As the plaintiff came out of the single door, she

walked in a direct line to the edge of the platform (which was practically on a level with the tracks) and looked to her right and her left, and, crossing in front of her were two passengers walking across in a direct line to the east-bound platform and she followed them in the same way they were crossing and without any protest from any of the employes of the defendant company. There were other people on the east-bound side, waiting on the platform for the train to come in, which was to take them to Jersey City for New York. As the plaintiff walked in a straight line, after glancing at the ground and saw dirt and gravel and tracks, and had taken two or three steps, her foot went into a hole between the two rails of the west-bound tracks. She lost her balance and in endeavoring to recover it, stumbled across and fell in front of the east-bound tracks, but was able to get up and get out of the way of the on-coming train without being struck by it. The photographs introduced by the defendant as to the general condition of the station, which were taken some two months after the accident, did not show the hole into which plaintiff was precipitated, as that had doubtless been filled up in the meantime. The hole and depression were not discernible when she looked at them, because all she could see was dirt, gravel and rocks.

It is pertinent to remark that there were two plankways running from the west-bound to the east-bound platform, but at the time of the accident, they were covered with dirt and were not visible to the plaintiff, and could only be seen on close inspection, which she was not required to make. The plankways were twelve feet wide and flush with the top of the rails, one fifty-four feet to her right and the other fifty-four feet to her left, or one hundred and eight feet apart, and that was the situation as she came out of the station and crossed over to the east-bound track. And there was evidence that the planks were unswept and therefore were quite indistinguishable, and that one had to walk quite a distance to the right or left before one could see them; and was a reasonable-minded person to conclude that there might be a safer passageway, which plaintiff could not see

from where she stood outside the station, to be found beyond either end of it and if she would walk to one or other end and make an inspection, and if she did so she would discover it; and to which end must she go, or to both? They appeared to the witness, Miss Bradley, as part of the road-bed. Another thing: There were no employes of the railroad company who directed her to which plankway to go, and especially none who told her that she was going in an unusual and unsafe way. Two other persons were crossing from platform to platform, and she quite naturally followed them, as she was obliged to get over to take her train.

In *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 52 *N. J. L.* 169, this court held that a railroad company must provide safe means of access to and from its stations for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe.

Now, in the case at bar there was a question as to whether or not the way across the railroad track was one which the plaintiff had a right to assume was a means of access from platform to platform and reasonably safe. There was the direct road before her, and other persons took the same way and preceded her in passing over, and, as said, no one was warned by any employe of the railroad company that that was not a passage and that they must go to one of the plank-ways (covered with dust and dirt and not discernible to persons of ordinary observation). And it was further held in the Trautwein case that a railroad company was not absolved from the duty of keeping a particular passageway reasonably safe by the fact that it had provided another passageway which the plaintiff might have taken. The opinion tacitly approved a charge to the jury, part of which was as follows: "Did the plaintiff do right in taking that way out? That depends upon the question, whether this way of passage was there by recognition, procurement or assent of the company as a means for the entrance and exit of passengers. Proof of such approval by the company, or its recognition, need not be made by any resolution or declara-

tion of the company, or of its agents. If, to persons of ordinary understanding and discernment, it appeared to be such a way, and by the company it was allowed to remain and be in use by passengers going to and from trains, anyone going to and from a train as a passenger was authorized to make use of it. If the company permitted it to be done openly, so that persons of reasonable judgment and discernment would conclude it to be a means of entrance and exit, then any passenger was authorized to take it and use it. It is submitted to you as a question of fact, whether, to an ordinary observer, this was held out as one of the passageways from the depot to the public street. If so, any passenger, so unwarned, might use it as such. * * * The duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reaonably safe. If there be two ways, one of which is faulty in construction or repair, a passenger using it and injured by its faulty condition will not be debarred of his action, although the other which he might have used was safer." This seems particularly apposite to the case at bar. If the carrier is obliged to maintain safe passageways to and from its station, it must maintain them between platforms at its station for the safe crossing of passengers.

The Supreme Court in *Yetter* v. *Gloucester Ferry Co.,* 76 *N. J. L.* 249, speaking by the chief justice, said (at *p.* 250) : "In the case of *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein,* 23 *Vr.* 169, the Court of Errors and Appeals held that 'the duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means of access to and from its station for the use of passengers.' This rule, of course, applies to other common carriers of passengers, including ferry companies, as fully as it does to railroad companies." And, equally of course, the rule applies to a railroad company carrying into

its station a person who has to cross its tracks to take another train for a continuance of the journey.

In *Atlantic City Railroad Co.* v. *Goodin,* 62 *N. J. L.* 394, this court said (at *p.* 396) : "Vice-Chancellor Van Fleet, in *Klein* v. *Jewett,* 11 *C. E. Gr.* 474, 479, points out that the rule of duty at a public crossing has no application to a case where, by the arrangement of the company, it is made necessary for passengers to cross a track in order to reach the station or the cars. He says: 'They [the railroad company] are bound to provide a way by which passengers may pass in safety. If the way provided crosses a track, no train should be permitted to pass over it at the point where passengers are required to cross it while a train is receiving or discharging passengers.' On affirmance by this court (*Jewett* v. *Klein,* 12 *C. E. Gr.* 550), Mr. Justice Dalrymple said that a passenger crossing a track which intervened between a station and a train standing at the station to receive passengers, was not bound to look to see whether another train was approaching. That decision would seem to be controlling in this case. A distinction is urged because it related to a crossing from station to train—not from train to station. This is a distinction without a difference. It is the passenger's right to go to the company's station, and a safe way for the purpose must be provided."

This last case, it will be observed, is pertinent on the argument whether the plaintiff in the case at bar was herself negligent, and therefore cannot recover. Its application to this case clearly indicates that she can, as she was not guilty of contributory negligence.

As Klein *v.* Jewett was a suit for damages in chancery for a railroad accident, it perhaps should be remarked that this court in the later case of *Palys* v. *Jewett,* 32 *N. J. Eq.* 302, held that a person having a legal cause of action sounding merely in tort against a receiver appointed by the Court of Chancery, has a right to pursue his redress by an action at law. And Chief Justice Beasley, writing the opinion of the Court of Errors and Appeals, said (at *p.* 318), that the plaintiff was entitled as a matter of right to a trial by jury;

but the order refusing him such right had not been appealed from, as it unquestionably might have been, and as both parties submitted to a trial before a vice-chancellor the decision rendered in the court below was susceptible of being reviewed on the merits.

In *Redhing* v. *Central Railroad Co.*, 68 *N. J. L.* 641, it was said by this court (at *p.* 643) : "It is the settled rule in this state that, when the position of the station and tracks of a railroad company is such that passengers, about to take or leave a train standing at the station, must cross intervening tracks, it is negligence in the company to run cars over those tracks, and it is a question for the jury whether a passenger, who attempts to cross those tracks without looking for approaching cars, is guilty of negligence. *Jewett* v. *Klein, supra; Atlantic City Railroad Co.* v. *Goodin,* 33 *Vr.* 394." Here the plaintiff was obliged to cross intervening tracks of the defendant company, and it is as much negligence in the company not to provide a discernibly safe passage from the station where she was obliged to cross the tracks to the opposite platform, as to run cars over those tracks at the time.

In the circumstances, we think a jury question was presented, and as the case was submitted to the jury, we therefore think that the judgment of the Supreme Court should be reversed to the end that the judgment recovered in the trial court shall stand.

*For affirmance*—THE CHIEF JUSTICE, BLACK, CASE, BODINE, HETFIELD, JJ. 5.

*For reversal*—THE CHANCELLOR, PARKER, CAMPBELL, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, DEAR, JJ. 8.